UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

No. 1:22-cr-00222-CRC-1

v.

Hon. Christopher R. Cooper
United States District Judge

RYAN KELLEY,

Defendant.

**DEFENDANT RYAN KELLEY'S SENTENCING MEMORANDUM**

## I. SUMMARY

On July 27, 2023, Mr. Ryan Kelley, a 42 year old man married man with six kids and no criminal history, pled guilty to one misdemeanor count of Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). The penalties for this offense range from no incarceration to up to a maximum penalty of 12 months incarceration. Mr. Kelley's estimated Sentencing Guidelines range is 0-6 months based on a criminal history category of I and a total offense level of 4.

Probation recommends a three year term of probation. Mr. Kelley respectfully submits that a term of probation is appropriate, especially in light of the applicable statutory sentencing factors, discussed further below.

## II. APPLICATION OF THE 18 U.S.C. § 3553(a) SENTENCING FACTORS TO MR. KELLEY

When sentencing a defendant who has been found guilty of a crime, courts must comply with the basic aims of sentencing set forth in 18 U.S.C. § 3553(a). *Rita v. United States*, 127 S.Ct.

2456, 2463 (2007). The basic aim of sentencing is to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a); *United States v. Kimbrough*, 128 S.Ct. 558, 570 (2007). The goals of sentencing are "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D); *Kimbrough*, 128 S.Ct. at 570. The lowest possible sentence that is minimally sufficient to meet those goals must be imposed. 18 U.S.C. § 3553(a).

In fashioning a sentence, the Court is to consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the advisory guideline range; the need to avoid unwarranted sentencing disparities; the need for restitution; and the need for the sentence to reflect the following: the seriousness of the offense promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense

On January 6, 2021, Mr. Kelley attended the "Save America Rally," near the Ellipse. After the rally, he marched to the U.S. Capitol because he believed former President Trump was going to speak there. After he arrived on Capitol grounds, he worked his way to the Capitol building. Mr. Kelley went to Washington, D.C., to engage in a lawful protest of the certification of the election that he sincerely believed was stolen based on the representations of former President

Trump. He did not go with the intention of hurting anybody. Accordingly, Mr. Kelley submits that his non-violent actions on January 6 warrant a sentence involving no incarceration.

Unlike many individuals present at the Capitol on January 6, 2021, Mr. Kelley did not even enter the Capitol building. Nor did he engage in or threaten to engage in any violence. In determining an appropriate sentence, a particularly relevant factor to be considered by the Court is whether a defendant engaged in violence is a part of the nature and circumstances of the offense. Ignoring that Mr. Kelley did not engage in violence on January 6, 2021 would fail to take into account a critical fact that Mr. Kelley's refusal to engage in violence distinguishes him from those who had neither the sense nor the will to refrain from doing so. Moreover, committing a non-violent offense is a well-recognized mitigating factor that routinely serves as the basis for a downward variance from the applicable guidelines in felony cases. *See, e.g.*, *United States v. Price*, 496 F. Supp. 3d 83, 90-91 (2020) (life offense reduced to time served (13 years) based on extraordinary and compelling reasons and analysis of 3553 factors, which included, *inter alia*, non-violent nature of the offense of conviction and defendant's positive record in prison of not engaging in violence); *United States v. Johnson*, 2022 US Dist LEXIS 129168, pp. *34-35 (reduction of sentence in compassionate release case justified by non-violent nature of the defendant's drug offense and non-violent prior convictions).

Finally, Mr. Kelley has accepted responsibility for his actions by pleading guilty to the instant offense. Mr. Kelley has accepted responsibility not only with the Court, but has also taken it upon himself to explain his wrongdoings and the potential consequences to his family. Mr. Kelley understands and appreciates that he never should have participated in the protests that turned into a riot that day and that such violence has no place in our democracy.

Nevertheless, Mr. Kelley submits that his limited role in the events of January 6 weigh in favor of a sentence to probation without incarceration.

**B. Mr. Kelley's History and Characteristics**

Mr. Kelley is a 42-year-old married father of six children who has never before been in trouble with the law. Those who know Mr. Kelley describe him as polite, caring, respectful, and as an active and supportive father to his 6 children.



Mr. Kelley works hard to support himself and his family, having been steadily employed as a real estate broker. Mr. Kelley owns his own business that employs another licensed agent. He enjoys the full support of his family and friends.

**C. The Need for the Sentence to Promote Respect for the Law, Just Punishment, Adequate Deterrence, and Protection of the Public from Further Crimes of the Defendant.**

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." These sentencing objectives, set forth in section 3553(a)(2)(A) are generally referred to, collectively, as "retribution," which has been defined as follows:

> First, retributive, or "just desserts," theory considers only the defendant's past actions, not his or her probable future conduct or the effect that the punishment might have on crime rates or otherwise. Second, retribution examines the actor's degree of blameworthiness for his or her past actions, focusing on the offense being sentenced . . . Third, the degree of blameworthiness of an offense is generally assessed according to two kinds of elements: the nature and seriousness of the harm causes or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (*mens rea*) motives, role in the offense, and mental illness or other diminished capacity.

Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn. L. Rev. 571, 590 (February 2005) (emphasis supplied).

Furthermore, In debunking the myth that lengthy sentences have a deterrent effect, Amy Baron Evans, a leading scholar on federal sentencing, wrote:

> Indeed, while many believe that the higher the sentence, the greater the effect in deterring others, the empirical research shows no relationship between sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But th e question for the judge is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime. Here the findings are uniformly negative: there is no evidence that increases in sentence length reduce crime through deterrence. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

Amy Baron Evans, Sentencing By the Statute, April 27, 2009, available at: http://www.fd.org/pdf_lib/. Thus, it appears there is no correlation between the length of the sentence and its deterrent effect. The most critical factor is that there is predictable accountability.

Mr. Kelley is being held accountable for his actions, understands the seriousness of this offense, and understands that what he did was wrong/illegal. A probationary sentence without any incarceration is sufficient, but not greater than necessary, to accomplish the goals of sentencing listed above in Mr. Kelley's case. While on probation, Mr. Kelley undoubtedly will be required to abide by several conditions that severely restrict his liberty, which is not an insignificant form of punishment and one that also promotes respect for the law, provides just punishment in Mr. Kelley's case, and offers some measure of protection of the public, as Mr. Kelley would continue to be under the watchful eye and supervision of U.S. Probation. *See Gall v. United States*, 552 U.S. 38, 43, 47 (2007) (affirming sentence of probation where sentencing guidelines recommended 30-37 months of imprisonment, in part, because the district court correctly assessed "that probation, rather than 'an act of leniency,' is a 'substantial restriction of freedom'").

Mr. Kelley need not be incarcerated to protect the public. First, Mr. Kelley's role in this offense was non-violent. He has demonstrated throughout the pendency of this case that he is able to conform his behavior to the law while on pretrial release. Moreover, Mr. Kelley has proven over the last 42 years that he is capable of being a law-abiding citizen and this is his first brush with the law. Being a first-time offender, he is statistically less likely to reoffend, especially since he has accepted responsibility for his actions in an extraordinary way. (*See* Sentencing Commission's report, Recidivism and the "First Offender" (May 2004), available at http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf, which notes that:

> The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points. Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all.

All of this further evidence that a sentence that includes incarceration is not necessary to protect the public from further crimes or to specifically deter Mr. Kelley from committing any further crimes.

To the extent that the Court or the government is concerned that a lenient sentence threatens to promote disrespect for the law and fails to provide adequate general deterrence to others who might consider assaulting the Capitol, the fact that countless other defendants have been sentenced to terms of incarceration, including significant prison sentences in the more egregious cases, offsets this concern. *See Gall v. United States*, 552 U.S. 38, 52 (2007).

**D. The Need to Avoid Unwarranted Sentencing Disparities**

Section 3553(a)(6) requires the Court to consider at sentencing "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." Counsel for Mr. Kelley, of course, recognizes that the Court is in the best position to ensure that there are no unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. However, counsel would submit that sentencing Mr. Kelley to a term of probation would not invoke an unwarranted sentencing disparity as the sentencing guidelines suggest a sentence of *zero* to six months incarceration and due to the upcoming change in the guidelines to better account for situations in which a defendant has no prior criminal record.

## III. CONCLUSION

Based on the above, Mr. Kelley respectfully submits that a probationary sentence is a sufficient sentence to accomplish the goals of sentencing under 18 U.S.C. § 3553(a).

Dated: 10/10/2023

Respectfully submitted,
*/s/ Gary K. Springstead*

Gary K. Springstead
Counsel for Defendant
60 Monroe Center St., N.W., Suite 500
Grand Rapids, Michigan 49503
Tel: (616) 458-5500
gary@sbbllaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

No. 1:22-cr-00222-CRC-1

v.

Hon. Christopher R. Cooper
United States District Judge

RYAN KELLEY,

Defendant.

**ATTACHMENT A -- DEFENDANT RYAN KELLEY'S SENTENCING MEMORANDUM**

FROM THE DESK OF

# Maija C. Hahn, MS, CCC-SLP

September 28, 2023

To Whom It May Concern,

My name is Maija Hahn and I am the president of the autism organization, R.E.A.C.T: Research and Education for Autistic Children's Treatment. I dedicate my life to advocating for others and I am writing you today to be an advocate for my friend Ryan Kelley.

I had the pleasure of meeting Ryan while I lived in Michigan. Ryan and his family have been strong supporters of our cause and our advocacy efforts. They attended many events and rallies and Ryan and I even hosted some events together. I have always known him to be caring, sensitive, and respectful. I have seen him, on multiple occasions, offer help to others in need, extend a listening ear, and even deescalate potentially hostile situations with kind gestures and respectful dialog.

One such situation stands out in my memory which highlight's Ryan Kelley's genuine nature. Back in June of 2020, I was attending an American Patriot Rally, where Ryan was educating a large crowd on constitutional rights, when a group of Black Lives Matter protestors approached and forcefully integrated into the middle of the crowd. This group was marching in protest against police brutality when they happened upon our event. The situation could have become quite hostile and even dangerous if it were not for Ryan stepping in with his wonderful diplomacy and respectful hospitality. Everyone around us simply stopped and observed what one man can do to deescalate emotions through calm, mutual respect, and kindness. In the end, Ryan and the BLM leader shook hands and Ryan invited them to join the festivities.

Ryan Kelley is an exceptional person who has a heart for everyone. He loves all people and his country. He is a faithful man and raises his young children to love God, to love others as family, and to appreciate the freedoms we have been granted through this great nation. I know his heart, it's the heart of a loyal, God-fearing America father.

Thanks for listening,

Maija C. Hahn, MS, CCC-SLP

maija@REACTforHope.org

(909) 289-3406




Rally organizer Ryan Kelley, left, talks with activist Paul Birdsong, right, at American Patriot Rally for Constitutional Rights at the Capitol Building in Lansing, Thursday, June 18. Birdsong's group was protesting against police violence and came upon the rally at the Capitol.

ROD SANFORD



Paul Birdsong of The People of Lansing, a group protesting police brutality, and Ryan Kelley, an organizer of the American Patriot Rally, speak near the Capitol steps on Thursday, June 18, 2020. *Beth LeBlanc/The Detroit News*

Dear Honorable Christopher Cooper,

I have had the privilege of knowing Ryan Kelley and his family for several years, and throughout this time, I have consistently witnessed their unwavering commitment to principles of honesty, integrity, and community service. Ryan stands out as an individual who not only upholds these values in his personal life, but also actively contributes to the betterment of society.

Ryan actively participates in various community initiatives, volunteering his time and resources to support local charities, educational programs, and other noble causes. His leadership and involvement in these endeavors have left a positive impact on not only local communities, but the entire State of Michigan. Ryan has a genuine desire to make the world a better place. He is dependable, trustworthy, and always ready to lend a hand to those who require assistance.

If you have any further questions or require additional information, please do not hesitate to contact me directly.

Respectfully,

Jessica Barefield

9/12/2023

Greetings Judge Christopher Cooper,

I am writing to express my personal reference in the character of Mr. Ryan Kelley. I have been friends with Ryan for several years.

Ryan has always shown high moral character. He is a good family man, good to his word and I have never known him to be less than truthful. I have seen Ryan with his family and I have met his mother several times.

I have never known Ryan to be ill-tempered and is one of the kindest people I know. Every time I needed anything from him or observed someone else in need, he is someone people can count on. I have only observed him treating people as he would want to be treated. He is respectful and a genuinely caring individual. I have seen him as an excellent husband, father and son.

I sincerely hope you take into consideration the good intentioned, genuinely caring of others, honest and nice man that I know to be Ryan Kelley.

Respectfully,

Jack Coleman

Jack Coleman

269-535-2328

Reference Ryan Kelley

To Whom it May Concern:

I have known Ryan since his birth and his parents Jean and Chris Kelly. I have helped mentor him through the years. Ryan comes from a very good family, having brothers who served their country, both being Captain's in the US Air Force. One being a doctor and the other a flight nurse. Ryan also has two cousins; one was a Lt. Commander in the US Navy and the other a recently retired WV State Police Officer with 20 years of service.

I personally have worked with various federal agencies in my career as a police officer with the city of Weirton WV ending with over 28 years of service and have served my community as county commissioner for 6 yrs. Ryan has a strong support system of family and friends.

Sincerely,

George J. Kource

George J. Kource

Minesh Baxi
Minesh Baxi and Associates
44 Ethan Allen Dr,
Palm Coast, Florida 32164

October 5, 2023

Judge Christopher R. Cooper
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington D.C. 20001

Dear Judge Christopher R. Cooper,

I enthusiastically offer a character reference for Ryan Kelley, a friend of over 10 years. Ryan embodies exceptional integrity, trustworthiness, and dedication. His reliability is unmatched; when he commits, he excels. What distinguishes Ryan is his genuine desire to make a positive impact, extending help to friends, colleagues, and even strangers. His kindness and empathy leave lasting impressions. Ryan's constant pursuit of excellence inspires those around him to aim higher. He traveled long distances for training, sharing knowledge on health products and real estate. I wholeheartedly endorse Ryan as a valuable asset to any organization, confident in his unwavering principles and exceptional qualities.

If you have any further questions or require additional information, please feel free to contact me at mineshbaxi@gmail.com or 248-866.0063.

Sincerely,

Minesh Baxi